UNITED DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 13-cr-109-03 (ESH) |
| v. ) | |
| ) | |
| Darius McKeever,        *defendant.* ) | |
| _____ ) | |

MEMORANDUM OF LAW (USSG §2B3.1(b)(2)(C))

Defendant, through undersigned counsel appointed under the Criminal Justice Act, submits this memorandum of law regarding USSG §2B3.1(b)(2)(C) ("gun bump") which adds five (5) levels to defendant's base offense level 20 for conspiring to commit a robbery under the Hobbs Act, 18 U.S.C. §1951.

1.   The PSR under "Offense Level Computation" adds a 5-level increase to the base offense level 20 for a "Specific Offense Characteristic":  "A firearm was possessed by members of the conspiracy during the course of the offense, therefore, five levels are added. USSG §2B3.1(b)(2)(C)." (PSR ¶22, page 5)

2.   Members of the conspiracy (namely, Trevor Hopkins and Darnell Wallace), but not Mr. McKeever, possessed the firearms that an undercover officer, part of the sting operation, supplied to them.  This by itself does not excuse the defendant.  (*See* USSG 1B1.3(a)(1)(B) *infra* regarding criminal responsibility for "jointly undertaken criminal activity." )  Rather, *when* the codefendants possessed the guns makes improper the increase in the base offense level.

3. The PSR says the possession of the firearms occurred "during the course of the offense…." Yet the PSR makes clear that Hopkins and Wallace possessed the guns *before* the defendants[1] reached an agreement to rob the liquor store.

4. ¶¶ 10 and 11 of the PSR's "Offense Conduct" section describe the defendants' actions on April 4, 2013, the day of their arrest. (PSR page 4)  ¶10 details the undercover officer's display of two firearms to Hopkins and Wallace. Both Wallace and Hopkins handled a Sig Sauer 9mm pistol and Wallace also handled an AK-47 assault rifle. ¶11 provides details about the meeting of the four defendants in the storage room at 175 R St. NE, Washington, D.C.  (This storage room was maintained by MPD and FBI agents who ran the sting. It was equipped with a camera that recorded the actions and speech of the defendants.)

5. ¶12, the final paragraph of that section, says, "The four defendants all agreed to the robbery after hearing the details, even toasting to the plan." (PSR page 4)  The moment of agreement fixes the time for the commission of the crime, because conspiracy is an agreement to commit a crime. A conspiracy begins when two or more persons reach an agreement to commit a crime.

"In the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," USSG §1B1.3(a)(1)(B) holds a defendant responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred *during the commission of the offense of*

---

[1] For purposes of this objection, this discussion applies to McKeever and Wallace because they have pled guilty to the indictment, and to Hopkins, whom a police video shows handling a gun. Defendant takes no position on whether or not the fourth defendant, Kenneth Benny-Dean, who is scheduled for trial, conspired with others, although the following analysis would seem to apply to him, too.

*conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....*" (Italics added)

6. Codefendants Hopkins and Wallace's possession of the two firearms did not occur during the commission of the offense. And, of course, the gun handling had nothing to do with an attempt to avoid detection or responsibility for a crime yet attempted, much less completed, namely, the robbery of the liquor store.

7. Application note 2 to "Relevant Conduct (Factors that Determine the Guideline Range)" (USSG 1B1.3(a)(1)(B)) of the General Application Principles says,

> *A defendant's relevant conduct does not include the conduct of members of a conspiracy* prior to the defendant joining the conspiracy, *even if the defendant knows of that conduct (e.g., in the case of a defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week, the cocaine sold prior to the defendant joining the conspiracy is not included as relevant conduct in determining the defendant's offense level). The Commission does not foreclose the possibility that there may be some unusual set of circumstances in which the exclusion of such conduct may not adequately reflect the defendant's culpability; in such a case, an upward departure may be warranted.* (Emphasis added)

8. Even if Hopkins and Wallace constituted a conspiracy at the time they handled the guns, (that is, they agreed to commit together a robbery), Mr. McKeever was not yet a part of it. And if their gun handling were preparation for the offense (the third basis for derivative liability), it would not implicate Mr. McKeever: it would be *their* overt act done in furtherance of *their* conspiracy. Therefore, Mr. McKeever cannot be held responsible for their possession of firearms before he joined the Hopkins/Wallace conspiracy.

9. The gun enhancement of USSG §2B3.1(b)(2(C) punishes *actual*, not attempted, contemplated or foreseeable possession (or brandishing) of a firearm. One cannot impute to defendant McKeever an intention to possess a firearm once the criminal activity is

undertaken. Certainly not when the robbery itself, the object of the conspiracy, has not been committed.

10. It may be that, as the probation office argues, the use of a firearm was contemplated. However, that does not make it "foreseeable." What was foreseeable is always done retrospectively—*after* the commission of an offense. "Foreseeable" is not the same as "predictable," which, defendant submits, the probation has in mind.

11. Foreseeability is used ordinarily to impute liability to a conspirator or accomplice whose confederate has committed a separate criminal act during the criminal venture. For example, the shooting of a robbery victim (or arming oneself during a robbery) might make the unarmed conspirator liable, while the rape of a robbery victim might not.

12. Inasmuch as an overt act is not essential to the commission or proof of a Hobbs Act conspiracy, Hobbs Act conspirators might plan on killing their robbery victim, yet face no more than a guideline offense level 20 so long as they did not actually commit a murder; USSG §2B3.1 ("Robbery, Extortion and Blackmail") increases the base offense level, with one exception, only when the defendant commits another crime or dangerous conduct while committing the Hobbs Act robbery. (The exception is the enhancement of §2B3.1(b)(1) that adds 2 levels "if the property of a financial institution or post office was taken, or *if the taking of such property was an object of the offense*...." [italics added])

13. Research of cases in which appeals courts have treated the gun bump reveals that they tend to fall into two categories: (a) claims that a gun bump and a §924(c) conviction punish a defendant twice for the same conduct (duplicative), and (b) claims

that a confederates possession or brandishing or other use of a firearm during an offense was not foreseeable. *See United States v. Cover*, 199 F.3d 1270 (11th Circuit 2000).  Gun bumps are permitted when one party possesses a gun in an attempted robbery. *See United States v. Villegas,* 655 F.2d 662 (7th Cir. 2011); *see also United States v. Bolden*, 132 F.3d 1353 (10th Cir. 1997).  But there is no case which shows that the gun bump may be imposed before a conspiracy begins.

14.  Indeed, defendant submits that USSG §2X1.1 applies herein and that defendant deserves a 3-level reduction of his offense level because defendant was arrested at the moment the agreement was reached and the object of the conspiracy was not effectuated. Defendant's adjusted offense level should be 17.

This memorandum is,

Respectfully submitted,

/s/

NATHAN I. SILVER/#944314
Attorney for Darius McKeever
P.O. Box 5757
Bethesda, MD 20824-5757
(301) 229-0189 (office)/(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served this 7th day of October, 2013, upon AUSA Emory Cole, Narcotics and Violent Crimes Section, U.S. Attorney's Office, and Carmen Hernandez, Esq., attorney for codefendant Wallace, via ECF.

/s/
_____
*Nathan I. Silver*