1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2

3    THE UNITED STATES OF AMERICA,)
                                  )      File No:  CR 13-109
4                  Plaintiff,     )
                                  )      Date:  April 25, 2013
5    vs.                          )      Time:  9:15 a.m.
                                  )
6    (1)  Trevor Hopkins,         )
     (2)  Darnell Wallace,        )      STATUS CONFERENCE
7    (3)  Darius McKeever,        )
     (4)  Kenneth Benny-Dean,     )
8                                 )
                   Defendants.    )
9

10   _____

11              TRANSCRIPT OF STATUS CONFERENCE
                        HELD BEFORE
12          THE HONORABLE ELLEN SEGAL HUVELLE
                UNITED STATES DISTRICT JUDGE
13

14   _____

15   APPEARANCES:

16

17   For the United States:      Mr. Emory V. Cole
                                 U.S. Attorney's Office
18                               555 Fourth Street, NW
                                 Washington, DC   20530
19

20

21   For the Defendants:     (1)  Mr. David Bos
                                  Federal Public Defender
22                                625 Indiana Avenue, NW
                                  Suite 550
23                                Washington, DC   20004

24                           (2)  Ms. Carmen D. Hernandez
                                  7166 Mink Hollow Road
25                                Highland, MD  20777

```
 1
 2                          (3)   Mr. Nathan I. Silver, II
                                  PO Box 5757
 3                                Bethesda, MD   20824

 4                          (4)   Mr. Edward C. Sussman
                                  601 Pennsylvania Avenue, NW
 5                                Suite 900-South Building
                                  Washington, DC   20004
 6

 7

 8

 9

10
      Court Reporter:             Vicki Eastvold, RMR, CRR
11                                Official Court Reporter
                                  U.S. Courthouse, Room 6722
12                                333 Constitution Avenue, NW
                                  Washington, DC   20001
13                                202-354-3242

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE DEPUTY CLERK:  This is criminal case 13-109,

2     United States of America versus Trevor Hopkins, defendant

3     one; Darnell Wallace, defendant two; Darius McKeever,

4     defendant three; Kenneth Benny-Dean, defendant four.  Emory

5     Cole for the government.  David Bos for defendant one,

6     Carmen Hernandez for defendant two, Nathan Silver for

7     defendant three and Edward Sussman for defendant four.

8          THE COURT:  Okay.  Good morning.  Mr. Cole, why

9     don't you first start to tell us a little bit about the

10    case, if you would.

11         MR. COLE:  Yes, Your Honor.  Your Honor, this case

12    originated from an investigation by the Metropolitan Police

13    Department.  They set up a shell business in consultation

14    with the defendant Hopkins and the co-defendants.  The

15    business -- the defendants and the undercover officers

16    engaged the defendants in discussions.  The defendants were

17    led to believe that there was a store owner in Oxon Hill,

18    Maryland, and that that store was ripe to be robbed based on

19    the defendants' criminal propensities.

20         The undercover officers and the defendants on

21    April the 4th at a storage facility in the District of

22    Columbia, which was under video and audio surveillance, the

23    four defendants came to meet with the undercover officers in

24    a preparation to rob the business.

25         The defendants were to be presented -- the

1    defendants were to be given the plan by the defendants and

2    the officers were going to assist in the robbery of this

3    particular establishment in Maryland on that day.

4         The robbery was supposed to be of a convenience

5    store owner which would involve guns and may have been

6    violent.  During their discussions, defendant Hopkins along

7    with the other three defendants came with the specific

8    intent to execute the robbery on or about that day.

9         THE COURT:  The date being again?

10        MR. COLE:  April 4, 2013, Your Honor.

11        THE COURT:  Okay.

12        MR. COLE:  So in this business that the undercover

13   officers were working, these defendants came there willingly

14   with the specific intention of going to rob the store owner

15   of commercial goods.

16        THE COURT:  Is it all on audio tape or video as

17   well?

18        MR. COLE:  Video as well, Your Honor.

19        THE COURT:  Are they all four present?

20        MR. COLE:  They are.  And they were arrested

21   immediately after the -- after the discussions and the full

22   implementation of the conspiracy.

23        That's why we've charged the defendants

24   accordingly, Your Honor, with conspiracy to interfere with

25   interstate commerce by robbery, known commonly as the Hobbs

1    Act.  This is a Hobbs Act violation because defendants

2    participated and they agreed to go and rob the individuals

3    at this particular store by way of --

4              THE COURT:  Is there some reason why these

5    individuals landed up dealing with these police officers?

6              MR. COLE:  Say that again, Your Honor.

7              THE COURT:  Is there some reason in particular the

8    police landed up dealing with these individuals?  How did

9    they land up getting together in the first instance?

10   Somebody give them a tip?

11             MR. COLE:  Several months -- several weeks earlier

12   the undercover had made contact with defendant Hopkins, as I

13   understand it.  And based on my review of the facts and

14   talking to the officers, the defendant Hopkins and/or

15   defendants Wallace and McKeever on various occasions prior

16   to April the 4th met with the undercover officers to scope

17   out a particular plan about how to rob individuals of --

18   businesses of their goods and/or money.  Defendant Hopkins

19   has met with the undercover officer on several occasions.

20   It is defendant Hopkins who brought along Wallace and

21   McKeever on various other dates to discuss plans and

22   preparations for the robbery.

23             On April the 4th of 2013, defendant Benny-Dean

24   first appeared at the final stages of the robbery plans and

25   action.  So it was Hopkins, Wallace and McKeever who

1      previously at various times had met with undercover

2      officers.  Defendant Hopkins had met with the officers

3      consistently.

4              THE COURT:  Did someone have weapons on the 4th or

5      was it just talk of it?  I know there was talk about --

6              MR. COLE:  No, it was talk about it, Your Honor.

7      And the FBI agents were to present inoperable weapons.  I

8      don't know if that transpired.  But there was specific talk

9      of weapons and the FBI was going to provide weapons at that

10     time.  But they were arrested at the storage facility in the

11     District of Columbia, so the plan was not executed beyond

12     the four defendants coming to the storage facility for that

13     purpose.

14             THE COURT:  My question, though, is why did the

15     undercover land up talking to Hopkins in the first place, do

16     you know?

17             MR. COLE:  I can't tell you that right now.  But

18     Hopkins was the first one that engaged undercover officers,

19     I can tell that you that.  I'll have a further update for

20     you on that particular question, Your Honor.

21             THE COURT:  Where do you stand in discovery?

22             MR. COLE:  Discovery's substantially complete.  We

23     have given counsel all the audio, video, which includes

24     certain interviews of three of the four defendants.

25             THE COURT:  What do you mean "interviews"?

1         Post-arrest?

2                 MR. COLE:  Yes, Your Honor.  I'm sorry.

3         Post-arrest.  And videos.

4                 THE COURT:  And three waived their rights?

5                 MR. COLE:  That is correct, Your Honor.

6                 THE COURT:  And that's all on tape?

7                 MR. COLE:  Yes, Your Honor.

8                 THE COURT:  Who didn't?

9                 MR. COLE:  I've given that to counsel.  I know

10        it's three.  I reviewed the --

11                THE COURT:  But who was the one that didn't give a

12        video post Miranda?

13                MR. COLE:  I can tell you, Your Honor.  We have

14        turned over an interview from defendant Wallace on April the

15        4th.  We've turned over an interview CD of defendant

16        McKeever.  We've turned over an interview of Mr. Hopkins.

17                THE COURT:  Okay.

18                MR. COLE:  There is -- I said it's substantially

19        complete, Your Honor.  I am aware of about two or three

20        other videos of the different meetings with Mr. Hopkins that

21        I don't have right now.  I have told -- with Mr. Hopkins

22        and/or McKeever and Wallace during the setup meetings with

23        the undercover police officers.  I'm aware of those.  I've

24        told at least one of the counsel that I would have those

25        within the next week or so.  But as it relates to everything

1    on April the 4th which generated the arrest of these

2    defendants, all of that has been given.  And I will give the

3    other set of DVD's to counsel within a week.

4            THE COURT:  Within the week?

5            MR. COLE:  Yes, Your Honor.

6            THE COURT:  So that'll complete it?

7            MR. COLE:  Yes, Your Honor.

8            THE COURT:  There's no more forensic coming?  Any

9    fingerprints?  No forensics?

10           MR. COLE:  That is correct.  They were arrested on

11   the spot, Your Honor, so there's no issues regarding

12   fingerprints or DNA regarding the events at this time.

13           THE COURT:  And have you made plea offers?

14           MR. COLE:  We haven't gotten to that point,

15   Your Honor.  I've just given discovery today.  I wanted to

16   make sure discovery was complete as relates to the issues

17   involved in the defendants' arrest.  And we will be in

18   consultations, discussions, with anyone that would like to

19   have a non-trial disposition in this matter.

20           In addition, I think it was -- on the indictment,

21   Your Honor, it says the liquor store, Earl's Liquor Store,

22   is 833 Southern Avenue Southeast, Oxon Hill, Maryland 28745.

23   If there is not a non-trial disposition I think -- it might

24   not be southeast.  It's just Oxon Hill.  There may just be a

25   minor adjustment in the indictment.

1          THE COURT:  Is there 404(b) as far as you know at

2    this time?

3          MR. COLE:  Yes, Your Honor.

4          THE COURT:  "Yes"?

5          MR. COLE:  Yes.

6          THE COURT:  As to all or --

7          MR. COLE:  All, Your Honor.

8          THE COURT:  Were they involved with each other

9    before?

10          MR. COLE:  I can't -- as it relates to this

11    incident or other incidents?

12          THE COURT:  I asked if there was any 404(b)

13    evidence and whether it involved them as a group or

14    individually.

15          MR. COLE:  I'm sorry, Your Honor.  I was thinking

16    of 609.  I do not have any at this time.

17          THE COURT:  As to each of them there's 609?

18          MR. COLE:  I believe they all have convictions,

19    Your Honor, which may play into a trial in this matter if

20    they testify.

21          THE COURT:  I have one bond review motion.  We'll

22    talk about that in a minute.  You haven't had a chance to

23    respond.

24          MR. COLE:  I have not.

25          THE COURT:  Is there anything specific as to any

1     of the counsel?  Are you aware at this time of any motions?

2        Mr. Bos?

3            MR. COLE:  Your Honor, can I just finish up before

4     defense counsel?

5            THE COURT:  Sure.  I thought you were finished.

6            MR. COLE:  I've talked to three of the four

7     defense counsel.  And they have gotten discovery.  I've told

8     them I will get them the other CD's within a week.  I think

9     we are all in agreement, three of the four, that if the

10    Court will give us at least -- some time to have some

11    discussions so that we could come back with a more firm

12    outline of where we want to proceed in this matter.  And

13    that the speedy trial until the next hearing will be waived.

14    If that might be helpful to you, Your Honor, as you work out

15    the calculus in this matter.  That's all I have.

16            THE COURT:  Yes, thank you.  We can do that.  I

17    just have to tell you that I'm going to be out of the office

18    from May 7 to about the 23rd.  So however we do this, we

19    have to work around that schedule.

20            MR. BOS:  For the record, Your Honor, David Bos on

21    behalf of Mr. Hopkins.

22            THE COURT:  It's been a long time, Mr. Bos.

23            MR. BOS:  It has.  Our assessment is that we're

24    going to be asking the Court to set a status in about 30

25    days or so, maybe early June.  I do want to just respond to

1  a couple things that the government said.

2          THE COURT:  Have you discussed the speedy trial

3  with your client?

4          MR. BOS:  I have, Your Honor.  He's prepared to

5  waive those rights today through counsel, and he understands

6  that he will be held during the pendency of that

7  continuance.  And that we'd not be asking for written

8  findings of fact in support of that exclusion.

9          THE COURT:  Okay.  And Mr. Hopkins, you're number

10  one there?  All right.  Good morning.

11          MR. BOS:  To answer the Court's question to the

12  government, this is a case where the undercover officer

13  actually reached out to Mr. Hopkins.  And in fact, I think

14  the Court's going to see -- and again, we're somewhat

15  limited because I haven't had a chance to review all the

16  discovery, but I have reviewed the complaint.  And this is a

17  case where the undercover officers generated the crime, they

18  generated the implements of the crime.  At the time

19  Mr. Hopkins showed up at the time the conspiracy was, quote,

20  formed on the 4th, he had no weapon, had no ability to carry

21  out the robbery.  So we do have some concerns about this

22  investigation.

23          We also believe that there's a pretty viable

24  entrapment defense at this point.  But obviously we need a

25  chance to review the discovery.  And I certainly need to

1    have a chance to review that discovery with Mr. Hopkins

2    before we make a final decision as to whether or not we'll

3    be seeking a resolution in this case.

4              THE COURT:  He has a prior record?

5              MR. BOS:  Very minimal prior record, Your Honor.

6    There's an ADW conviction from 2001, and then there's a

7    possession of -- possession with intent to distribute

8    marijuana charge from 1999.  But those are the really only

9    two.  And I think the '99 case may be excluded under the

10   sentencing guidelines because of the age.

11             THE COURT:  But you agree the discovery at least

12   that you've got to date.

13             MR. BOS:  Yes.

14             THE COURT:  All right.  Okay.  And he's made a

15   statement.  So you think there might be motions if we get

16   there?

17             MR. BOS:  I'm sure there will be motions,

18   Your Honor.

19             THE COURT:  Okay.  And Mr. Sussman?  On behalf of

20   your client, Benny-Dean?

21             MR. SUSSMAN:  Yes, Your Honor.  I join in the

22   request for a status when it's convenient to the Court.

23   I've spoken to him about the speedy trial rights and he's

24   prepared to waive them through the next status.  Obviously

25   when you have a situation where three of the defendants give

1    statements -- post-arrest statements -- and your client

2    doesn't, there's likely to be motions concerning possible

3    severances.  I haven't heard the statements yet but --

4              THE COURT:  But you will get to see those

5    statements, right?

6              MR. SUSSMAN:  I believe that was part of

7    discovery.

8              THE COURT:  The other defendants', he'll get to

9    see them?

10             MR. COLE:  Your Honor, I did provide the other

11   defendants' statements to the different counsel.  However,

12   if you believe that is appropriate at this time, I can do

13   that today.

14             THE COURT:  I think it is, sure.  How else do you

15   know whether you've got a *Bruton* problem, among other

16   things.

17             MR. COLE:  I'll do that today.  I have those and

18   I'll do it today.

19             THE COURT:  You'll all get the statements of the

20   co-defendants today.

21             MR. SUSSMAN:  The only other issue, as the Court

22   did note, the bond motion.  As the Court will recall, my

23   client was the one who arrived ten minutes before the arrest

24   and seemingly played no role with anything, any of the prior

25   month of negotiations or whatever ensued.

1          THE COURT:  I think I have to take that up

2    separately from today and let Mr. Cole -- we'll set it for

3    next week.

4          MR. SUSSMAN:  I know he's not good on his feet and

5    he would want plenty of time to prepare, so we'll set it for

6    whatever date is convenient for the Court.

7          THE COURT:  I think as a matter of course if

8    there's any other bond motions, they have to be filed by

9    this week so we can take them up next week because I'll be

10   gone.

11         Mr. Silver, you've gotten discovery and you're on

12   --

13         MR. SILVER:  Yes, Your Honor, we received it from

14   Mr. Cole this morning.  I anticipate at least one motion,

15   and that's a motion to suppress a statement that the

16   government attributes to Mr. McKeever.  There's a reference

17   to it in the complaint and there's also --

18         THE COURT:  I think it's an indictment.  You mean

19   the indictment?

20         MR. SILVER:  No.  There was a reference to it in

21   the affidavit in support of the complaint when the case

22   first came in and then it was highlighted at the detention

23   hearing.  So I expect at least that pre-trial motion.  There

24   may be other motions.

25         THE COURT:  Are you agreeable to a 30-day tolling

1   of the speedy trial?  Have you discussed that with your

2   client?

3            MR. SILVER:  Yes, I discussed it before Your Honor

4   came out and he agreed with that.  I explained the reasons

5   for it.  He's in agreement.

6            THE COURT:  Is that true?  Mr. McKeever, is it?

7   You would agree to waive your speedy trial rights for 30

8   days?  Everybody has a right to a speedy trial which means

9   essentially 70 days.  If there were no motions, that would

10  put it about June 18.  There will be motions -- I can tell

11  that -- and that slows it down.  But -- the Court can find,

12  but I also want to know if you have any objection.

13           I'll ask Mr. Hopkins, have you any objection to

14  waiving or tolling the speedy trial?  For 30 days.

15           DEFENDANT HOPKINS:  No, Your Honor.

16           THE COURT:  Okay.  And the next defendant is

17  Mr. Benny-Dean.

18           DEFENDANT BENNY-DEAN:  No, ma'am.

19           DEFENDANT McKEEVER:  No.

20           THE COURT:  All right.  And we'll wait for Mr.

21  Hernandez.

22           All right.  Mr. Silver, you've gotten your

23  discovery?

24           MR. SILVER:  Yes.

25           THE COURT:  And you'll get the other statements.

1        MR. SILVER:  That's right.  And the only other

2    issue is Mr. McKeever is being held on a parole detainer

3    from the parole commission I believe in a Superior Court

4    case.  And so the issue of a detention right now is mooted.

5    But if for some reason that's lifted I may file a bond

6    review motion.

7        THE COURT:  That's fine.  What about -- is

8    anything else holding Mr. Hopkins?  Mr. Bos.

9        MR. BOS:  No, Your Honor.

10        THE COURT:  And there's no detainer lodged against

11    Mr. Benny-Dean?  He has a Maryland problem, but --

12        MR. SUSSMAN:  No detainer, Your Honor.

13        THE COURT:  Okay.  And Ms. Hernandez, anything for

14    you and your client?

15        MS. HERNANDEZ:  Nothing that hasn't been said for

16    the most part.  As a matter of course I don't like to waive

17    speedy trial, but I understand since I'm charged with

18    co-defendants who are waiving speedy trial, the speedy trial

19    is waived, effectively.

20        THE COURT:  One of the purposes is to see in the

21    next 30 days whether we can resolve the matter as to all or

22    some.  I don't know whether the plea offer will be wired or

23    not.  I have no idea, obviously.  But --

24        MS. HERNANDEZ:  I understand.  And we just

25    received discovery which I think is timely.  I think there

1    will be motions.

2              THE COURT:  You have a statement, too, I take it?

3              MS. HERNANDEZ:  That's what I understand.

4              THE COURT:  Okay.  All right.  Let us --

5              MS. HERNANDEZ:  I don't know if there's a

6    jurisdictional issue in terms of Hobbs Act.  I mean, you

7    know, I don't know what --

8              THE COURT:  They got arrested here, I'm afraid.

9              MS. HERNANDEZ:  I don't know what federal interest

10   there is in this particular store.

11             THE COURT:  It's a conspiracy to -- that was --

12   there are acts here, I think, without having to study it

13   greatly I'm satisfied offhand.

14             All right.  So the Court -- is there any objection

15   by you, Mr. Wallace, to waiving the speedy trial?

16             THE DEFENDANT:  No, ma'am.

17             THE COURT:  All right.  The Court will waive the

18   speedy trial for 30 days.  We will set it down for a status.

19   We are now at April 25th.  I can do it the 23rd.  Monday the

20   27th is a holiday.  28th, 29th.  Any of those three days.

21   Does anyone have a preference 23rd, 27th, 28th?

22             MR. BOS:  Yes, Your Honor.  I prefer that we not

23   do it the week of the 27th.

24             THE COURT:  Then we'll do it the 23rd.  I'm

25   waiving the speedy trial between today and that date.

1          MR. BOS:  Your Honor, I'm available on either the

2     23rd or -- the 24th is not --

3          THE COURT:  It wasn't offered to you.

4          MR. BOS:  I'm available -- then I'll take the

5     24th, Your Honor.

6          THE COURT:  Any problem with the 23rd?  Okay.

7     We'll be -- 11:30 all right?

8          MR. COLE:  Your Honor, I have -- you say 11:30 on

9     the 23rd?  Yes.  I have a 10:30 before Judge Collyer so I

10    can just come see you then.

11         THE COURT:  Do you think you'll be on time?

12         MR. COLE:  Yes, Your Honor.

13         THE COURT:  We have a lot of lawyers.

14         MR. COLE:  I like to be on time Your Honor,

15    especially for you.

16         THE COURT:  Okay.  Mr. Cole, quit it.  I also

17    would like to have a tentative trial date.  I got four

18    lawyers in this case.  And if it's going to trial for all or

19    some, it's not going to be simple.

20         MR. COLE:  Your Honor, could I suggest -- could we

21    do that on the 23rd?  I want to have substantive

22    conversations with counsel regarding each defendant.  I

23    think it might be a little bit premature at this time.

24         THE COURT:  It's only premature if I can't get a

25    trial date out of all these people.  Mr. Bos, what's your

1    schedule?  Just give me some sense of what it's looking

2    like.

3              MR. BOS:  Your Honor, given the fact that

4    Mr. Hopkins is being detained at least at this point --

5              THE COURT:  Can you do it in August?

6              MR. BOS:  No.  I could do it in early September,

7    Your Honor.  In fact -- but even then it may require bumping

8    a trial.  And if I can't do it then then it's going to be

9    November, so I would ask if we could try and set this

10   sometime after -- either the week of September 9 or the

11   16th.

12             THE COURT:  You can't do it before the 9th?

13             MR. BOS:  Well, I could probably start like maybe

14   on the 5th.

15             THE COURT:  Just tentatively speaking,

16   Mr. Sussman, Mr. Silver, Ms. Hernandez?  I could do it in

17   August but -- I'm hearing problems already.  I can do it in

18   July for that matter.

19             MR. SUSSMAN:  Well, availability is my only asset,

20   so I'm available in those times.  But if he can do September

21   whatever, I can do that, too.

22             THE COURT:  Okay.  Mr. Silver, what is September

23   5th looking like?  I'm waiting on something from the Court

24   of Appeals which will have a speedy trial attached to it as

25   well.

1          MR. SILVER:  September 5th is Rosh Hashana.  I

2     can't do it that day, but I can start the 6th or the 9th.

3     And I'm available in July and early August, but I've got a

4     commitment after -- I think --

5          THE COURT:  Ms. Hernandez?

6          MS. HERNANDEZ:  I'm free in September, Your Honor.

7          THE COURT:  I think at this point we've got to be

8     flexible here.

9          Are you free, Mr. Cole, the 6th?  I'm going to say

10    -- just hold us a date.  We'll pick a jury on the 6th and

11    we'll start the trial the week later.  If it turns out that

12    the Court of Appeals sends me back something, I'm going to

13    have to do that and somebody else will do this.  It isn't

14    going to be a long trial.  I'd be surprised if it's a week.

15         MR. COLE:  That's correct, Your Honor.

16         THE COURT:  I just want to have a trial date that

17    we can live with.  But we have to do the motions sometime in

18    August, so somebody's got to be around sometime if you're

19    going to file.  Or we could, I suppose, early September.

20    Okay.  Let us see where we are.  But at least we have a date

21    for the 6th for the moment.  Okay.  We will be back then on

22    May what?

23         You have to file an opposition on --

24         MR. COLE:  I will, Your Honor.

25         THE COURT:  -- the current one.  If anybody else

1    has anything to file it should be done in the next 24 hours

2    so we can set it down next week.  We'll have a bail hearing.

3          Mr. Sussman, I've read this.  I mean, if I'm going

4    to consider it I've got to have a place.  He's got to have

5    residence to live.

6          MR. SUSSMAN:  If I remember, I suggested a halfway

7    house, it's the Department of Corrections.

8          THE COURT:  Oh, you did.  Okay.  Right.  You may

9    have.  All right.

10          MR. SUSSMAN:  I hope I didn't leave that part out.

11          THE COURT:  No, you may have.  I didn't know

12    whether you were thinking Maryland.

13          MR. SUSSMAN:  I was thinking -- pre-trial people

14    now, I understand.  I thought that would be a good solution

15    to the issue.

16          THE COURT:  Okay.  The -- so we're back on 5-23 at

17    11:30.  Trial is 9-6 for jury selection.  And then next

18    week -- I'll do any bond motion that's around for sure.  I

19    suggest we do it on the 6th of May.  2:00.

20          MR. COLE:  That's fine with me, Your Honor.

21          THE COURT:  2:00?  That's Monday?

22          MR. COLE:  Yes, Your Honor, that's fine.

23          THE COURT:  We'll do the bond review and any other

24    bond review that I see before that.  After that I won't be

25    able to.  Is that all right, Mr. Sussman?

```
 1              MR. SUSSMAN:  Fine.

 2              MS. HERNANDEZ:  May 6 is only for Mr. Sussman?

 3              THE COURT:  Well, if you file anything between now

 4     and -- I'm saying that you must file whatever you're going

 5     to file this week.  And Mr. Cole can respond.  And he has to

 6     respond before the 6th and we'll bring up -- some people

 7     have detainers and it doesn't make any sense.  I think you

 8     said that, Mr. --

 9              MR. SILVER:  My client has a detainer, Your Honor.

10              THE COURT:  Does yours, Ms. Hernandez?

11              MS. HERNANDEZ:  No, Your Honor.

12              THE COURT:  Well, we may be back for more than one

13     defendant.  Okay.  Mr. Cole, you'll file your responses --

14              MR. COLE:  Yes, ma'am.

15              THE COURT:  -- within days of receiving them, but

16     get your first response in this week.

17              MR. COLE:  I will do it with dispatch, Your Honor.

18              THE COURT:  Anything else at this time?  We'll be

19     back on the 6th for those who have bond motions.  Court has

20     waived the speedy trial.  Tolled it.  All right.  Thank you.

21              (Proceedings concluded.)

22

23

24

25
```

1          **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3

4

5               I, VICKI EASTVOLD, do hereby certify that the

6     above and foregoing constitutes a true and accurate

7     transcript of my stenographic notes and is a full, true and

8     complete transcript of the proceedings to the best of my

9     ability.

10         Dated this 14th day of January, 2014.

11

12                         _____s/Vicki Eastvold_____
                           Official Court Reporter
13                         United States Courthouse
                           Room 6722
14                         333 Constitution Avenue, NW
                           Washington, DC   20001
15

16

17

18

19

20

21

22

23

24

25